Bart Kelly, on behalf of the appellant, Tonja Wright, and her son Noah Jackson, pleased to be here today and appreciate your time. We have at issue a case where the defendants believe that the jury got the verdicts right and in a lawful manner on all points. That leaves us with about half of the issues to quibble over, because we agree with them on about half of the points. The jury concluded that a collision occurred whereby Mr. Poole, the defendant's truck, collided with my client's SUV, which she occupied with her son. The jury also concluded that injuries followed from the collision and that they caused the entirety of Ms. Wright's medical treatment. That medical treatment was awarded at $235,000 and was the agreed-to amount of past medicals for the case. So the jury concluded there was a collision, that there was negligence, that the collision caused the injuries and treatment, and the defendant does not contest those findings. We accept those findings as well. The part that we contest as reversible error is, and the most glaring error in this case, is the quantum given for damages. There's probably 10 people in this room right now or 15 people in this room right now, but the issue of the quantum given by this jury that is before your honors will have a resounding effect on this community and the litigants in it. $17,000 was awarded to Ms. Wright for what was concluded to be a two-level cervical fusion and seven epidural steroid injections over the course of the 30 months between the accident and trial. I myself have had a cervical fusion and epidural injections. We can only surmise, potentially as a guess, that of the $17,000, maybe they allocated $10,000 to a two-level cervical fusion and $1,000 to each epidural steroid injection. What is entailed in a cervical fusion? Well, they cut your neck open. They peel away all of the inside parts of your neck. They then cut out bone. They then cut out the discs inside. They then hammer in cadaver bones. They then put either blades or locking screws and plates that are metal inside your neck so your neck doesn't move anymore right there. As the IME doctor attested, it's like having one of those little wooden snakey toys. I have a three-year-old. I haven't seen that toy around my house lately, but when I grew up, it was pretty popular. It's got a bunch of joints. As the IME doctor testified, once you fuse one, two, or more of those together, that toy is no longer fun to play with. It doesn't work right anymore. The IME doctor acknowledged all of that. He acknowledged causation, and that's why the jury found causation. He acknowledged that all the treatment was appropriate, and he acknowledged that she was going to have range of motion problems and limitations for the rest of her fairly young life in her 40s, and further, that there would be pain, and that she would more probably than not need future orthopedic care as a result of it, much like she had already had seven epidural steroid injections and a fusion. So, it was established by the jury, and defense does not argue with it, that that procedure and the seven epidural steroid injections, which involve about a three-inch needle going into your spinal canal, wherein there is a risk of paralysis, there is a risk of infection by piercing the fecal sac and allowing spinal fluid to come out, each time you have one of those, you run a risk of literally a spinal cord infection that could kill you or paralyze you. Having been through this myself, I can assure you, your family is not very comfortable when you go in there, you're not very comfortable when you go in there, and that's why Louisiana law has dictated that the minimum that you can be awarded for a cervical fusion is $110,000, a two-level cervical fusion. That's in the Cormier case and other cases that we cited in our brief. Therein, a jury had awarded them about $60,000. The Court of Appeal of the Third Circuit wisely elevated to the minimum conscionable level, which they said was $110,000. My client, unfortunately, despite causation being established, was awarded $17,000. If this Court were to allow that to stand, we can imagine the Eason's quantum book, the other quantum books, all the new electronic quantum, is now going to say, essentially, quantum no longer exists. There is no minimum quantum. Had the jury rendered a verdict of $95,000, it would not have been sufficient, even just for the cervical fusion. But there's also Louisiana binding case law under the Erie Doctrine that binds your honors that says, under the Buckheister case decided in the Fifth Circuit, that a lady who had some radiofrequency ablations and some epidural injections, a far, far, far less than the invasive concept than a two-level cervical fusion, much more akin to the seven epidural injections that she had, they awarded a lesser amount, and the Court of Appeal elevated that, saying the minimum possible to be given for, essentially, the epidural-type treatment that my client had was $175,000 in general damages. That's over ten times what the jury awarded in this case, just for the nerve blocks, ablations, and injections. Ten times that is the minimum value that, in Louisiana, you can pay. What is it that allows us to replace the jury in its determination of that amount? Thank you, Your Honor. It's the Louisiana Code of Civil Procedure, Article 1814, calls for aditur. When there is an inadequacy of damages, the standard is an abuse of discretion, and an abuse of discretion can be met by an error of law. And it is the law of the State of Louisiana, under 1814, that you must give adequate damages. And under Erie, this Court is required to follow it. Justice Dennis served on our State Supreme Court and is well aware of the quantum in this State, as I'm sure all of you are. And so it's not only allowable, it's required. It essentially emanates from a due process right to be reasonably treated. When we look at, again, almost all of the cases that we cited regarding minimum values cite the whole chain of law saying that you've got to elevate these things to reasonable levels. Are you maintaining that this was a compromise? Your Honor, this is how I'd answer that question. Maybe. For the first five hours that the jury deliberated on Thursday, and we're talking about a year and two days ago today. For Thursday, they deliberated. They then, we have a question, Your Honor. What's the question? We all come in. The question is basically about what is preponderance of the evidence with regard to establishing apportionment of fault and whether the accident happened. The jury, the judge then winds up, they say, well, we're deadlocked. The judge then gives them the Allen charge, saying, hey, you know, this is a big deal. You all know that the Allen charge better than anybody is a big deal. Go back and figure this out. So there may have, my understanding from my own research involving the jury is that there was going, you know, they were at loggerheads in there. Nonetheless, defense does not even contest the conclusion, and we accept the conclusion because all medical doctors agreed everything was caused by this accident. Okay? So the $235,000, really, there was never any evidence to contradict that. So that part of the jury's verdict is, I think, unassailable. And they don't contest it either. So we get to the issue of were they confused. Well, what happens was, after three hours on Friday, they then come back, we have a verdict. They read the verdict, they give all the medicals, and they give zero, zero dollars for anything else. Zero general damages. Zero future wages. Zero future medical care. Zero everything other than they pay the medicals. Okay? So the judge rolls his eyes and asks us to approach. He then tells us, like, this doesn't work. This is inconsistent under Yarbrough. He then tells the jury that. Sends the jury back in. What does the jury do? They've been debating and at loggerheads for eight hours. They've rendered at least one, two viable conclusions that there was a collision that it caused all the medical treatment and injuries. And they're worn out, and they come out 13 minutes later. So to decide the entire damages model, they come out 13 minutes later. I propose it was probably more like 11 or 10, because it took them a minute and a half to get in there and get out of there. So clearly, I think we have an appropriate verdict with regard to the collision. We have an appropriate verdict with regard to causation. And we just have a problem with the damages. They didn't give the proper legally available range of damages, period. And by coming back, by starting with zero, it's clear that they were worn out. They weren't interested in really properly deliberating. What about all the evidence they saw that was taken of your client? Moving around, no pain, nothing? Right, right. Well, Your Honor, as I've mentioned, I had a cervical fusion myself. So have I. And I've had four injections. And as you can see, I'm moving around. It doesn't mean that I felt great after my surgery. It doesn't mean that I felt great for the years before I had the surgery. And frankly, I don't feel great right now. My arm's going numb. So it's not a credibility issue. It's not a perception issue. The law says very clearly under Buckheister, if you get these types of injections and whatnot, $175,000 is the minimum you can give. Jury gave less in there. Court of Appeal had to raise it. And credibility, they raised the issue of credibility. Credibility isn't an issue either. When you get your neck cut open and cadaver bones hammered into your neck, it hurts. And nobody has contested that. Under the Dolmo case decided in 1999, the Fourth Circuit was approved to give $2,500 a month in general damages for just strains and sprains. Well, the jury gave 30 months of treatment. And the IME doctor talked about the years of pain and restrictions she's going under. 30 months of treatment at $2,500, that's $75,000. If you gave $1,000 a month, that would be $30,000. This would be a more interesting debate if the jury had come back and given something like $175,000. Then I think this court would have to decide, well, that's what you've got to give for the injections. Do we just throw in the cervical fusion? But instead, they didn't even make it close. They gave $17,000 because they just threw in the towel. So I would report that the law requires this. And that if this court does not reverse on that basis, then literally it will defy the state law that controls under Erie. And it will put quantum in every book on every lawyer's desk in town and in the state that is completely, throws out quantum completely. The jury, again, erred in not giving any of the damages that emanate from the damages. When you've got what should be at least a $110,000. Under the Cormier case, you've got at least $110,000 for the cervical fusion. So we're talking now $175,000. $285,000 is really what the minimum quantum allowable by state law should be in this case. That also affects your family. That affects your consortium with your child. There was no evidence that was put on that she did not have a consortium with her child. Your time has expired. Thank you, Your Honor. You've got five minutes. Good morning. May it please the Court. My name is Nathan Godet. I'm representing the appellees who are National Interstate Insurance Company, Mabe Trunking Company, and Terry Trunking. I'm representing the appellees National Interstate Insurance Company, Terry National Interstate Insurance Company, and I'm representing the appellees I already discussed the various reasons why I believe that the verdict itself is inconceivable and no alternative explanation for it exists. I already discussed the various reasons why I believe that the verdict is not inconceivable. You know, there's a lot of talk about other people who have had these procedures and whatnot, and the fact of the matter is everybody suffers differently, everybody recovers differently. What might sideline me and cause me to suffer might not be the same for someone else. So those comparisons, and certainly those to other state court cases, they're just not applicable in this case, and that was noted by Judge Fallon in the denial of the motion for new trial. Anyway, going back to Yarborough, the second element is that the defendant does not challenge damage or concedes to the plaintiff's damages. That obviously did not happen here. The defendants in the trial court fought every allegation and every issue as far as causation, damages, everything. The third element is. . . You didn't discuss Buckmeister or Cormier. Why not? Well, I don't believe that, first of all, in response to the question from Judge Wiener, that this court certainly cannot provide an additive to the verdict. The court is limited to granting a new trial on that basis, and I don't. . . I thought we had precedent where we did do that. I'm sorry? I thought we had precedent where we did do that. I didn't see that, Your Honor. I think it's limited to a new trial on appeal pursuant to the Seventh Amendment. One way or the other, I don't believe that those other cases are going to apply. Excuse me. These aren't. . . They're simply not relevant. I mean, if we just had to register a database of cases where everybody that got a cervical fusion got X amount, we would never even submit it to the jury. I mean, we wouldn't. . . Credibility would hardly ever be an issue. Surveillance certainly wouldn't be an issue. If we just said everybody gets X amount, then we'd only try liability. They're also irrelevant because they cite the improper. . . There's an improper standard there. This court is guided by the federal standard of showing if any evidence supports the pain and suffering award Does that satisfy your question, Judge? Moving on to the fourth element of the Yarborough case is the failure of the jury to reach an agreement after instruction. This is exactly what happened in this case. The jury came back and reached an agreement after being instructed by the judge when all parties agreed that a zero for general damages is, in fact, inconsistent. This discussion with the trial judge was specifically in reference to Yarborough. And the fifth element that the appellant must show to show this was a compromised verdict is the evidence that the verdict was a tradeoff for liability and damages. And specifically to Yarborough, it says that if the record indicates that a liability verdict stemmed from a compromise on damages, the complaining party is entitled to a new trial. There's simply no evidence that there was a tradeoff on liability and damages. They asked one question and deliberated for a while. That's not evidence that there was a tradeoff liability for damages. And specific also to Yarborough, I would note that, let's see, on page 376 of Yarborough, the court says, although we do not favor questioning verdicts, when we are faced by the obvious facial contradictions between the verdict and the evidence presented, then a new trial may be granted. There's no such, nothing in this case rises to that extremely high level to show that insufficient damages alone trigger a compromised verdict. Were you trial counsel? I was second chair judge. Someone else tried the case. And Mr. Kennedy here is for all state, but they've waived their argument in this matter. The other, one of the other bases for a new trial argued by appellant's counsel is newly discovered evidence. The appellant argues that the second officer at the scene constitutes newly discovered evidence. Again, I don't think that the argument of appellant satisfies any of the elements of the newly discovered evidence. The facts are clear that the appellant knew about this officer at the scene of the accident itself. So it's certainly not something that was discovered after trial. It may have been cumulative because the first officer was listed as a witness but never called through no fault of the defendants. And the appellant didn't show that she took every reasonable effort to procure this evidence before trial. Certainly knowledge of the officer for two years before trial doesn't support a finding in that regard. And as far as the evidentiary rulings appealed go, the court must apply a deferential abuse of discretion standard on the denial of or granting of these various motions in limine. The district court abuses this discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. The first evidentiary issue concerned an October 2015, so post-accident, email chain between an insurance adjuster and counsel for the appellant. Wherein the adjuster said they agreed that liability was clear and we anticipate paying your client's damages. Hopefully this can be done without the need for litigation. This clearly falls under Rule 408 of the Rules of Evidence. This was an email that was designed to foster settlement and avoid litigation by its explicit terms. And that was addressed by Judge Fallon in his ruling. Slow down and enunciate a little bit. I'm sorry, Judge. Fairly and loudly. I'm having trouble following you. Yes, sir. Sorry. The second evidentiary ruling concerned a May 26, 2016 medical record. That was related to the appellant's treatment and diagnosis where she told her doctor, quote, I was supposed to have surgery on my neck but chose not to, end quote. And the trial court ruled this was an exception to the hearsay rule under 803 paragraph 4 because it was a statement made for diagnosis and medical treatment. And the record itself was an exception under 803 paragraph 6 as a business record. Again, this was fully briefed in the trial court. And the judge did not rely on any erroneous view of the law to have used his discretion in letting in that record. Third, the appellant complains about a January 23, 2017 letter that was allowed into the record. This was a letter from appellant's counsel to Geico Insurance Company, which was an insurer in a later accident wherein the letter states that the surgery was caused by this later accident. So it's inconsistent with the statements made at trial and in plaintiff's petition in this case. And the judge ruled that in because it was not evidence of assentment of this claim under the loose transactional test and under Lindell Chemical Company as well as Buchanan. The fourth evidentiary issue appealed was the exclusion of any portion of the police report where the investigating officer gave an opinion as to the freshness of the tire marks or what caused the accident. The officer was not qualified as an expert and was not allowed to make that determination. And Judge Fallon properly excluded those portions and excluded the presumptive testimony of the officer who didn't end up testifying. And I believe the last issue appealed is the appellant's contention that she was entitled to a spoliation ruling or an adverse inference concerning some dash cam video that simply never existed. The owner of the trucking company testified that only three things could cause the video to trigger and none of those were present here. The appellants didn't call an expert or the company that built the camera or anything like that to suggest that this video would have existed and that defendants knew about it. The fact is the video simply never existed, so it couldn't have been produced. So Judge Fallon could not be erroneous in that ruling as well. Subject to all that, does the Court have any questions? Yes. I would like a cite if you have one that says this Court has no authority to do an additure. Sorry. I don't have a cite that says specifically that, Your Honor. I just ran across in my research that it violates the Seventh Amendment according to my research evidence. It's helpful to have that in your brief since he argued that we have to follow state law and he cites two cases. I think that you have to follow the federal standard for sufficiency of the evidence. If you have a case that says that, that would be helpful. The sufficiency of the evidence standard? No, in response to Louisiana law cases that hold certain verdicts are inadequate in order and additory or alternatively a new trial. Why is it that the Fifth Circuit can't do that? I'm not saying we can't. I'm just saying he raised that in his brief and you didn't address it. I thought I addressed it by addressing the standard is not the state standard. It's the federal standard. In what case did you cite for that proposition that we do not apply Louisiana additure law? I believe it's Whatley v. Armstrong World Industries, 861 Federal 2nd 837. Thank you, Judge. There's no further questions? You have no further argument? Yes, sir. Okay. Thank you, sir. Thank you. Well, actually that case doesn't address that. Kevin, you have five minutes on rebuttal. Thank you, Your Honor. Out of deference to the court, I believe in my brief I cited the Kaufman case from the I must admit I was very surprised when I encountered that and I would generously object to that concept because when you try a case in federal court, you have to pay your doctors, you have to pay all your experts, and you don't recover those costs. So it is frankly a burden on plaintiffs to have to retry the case, which is why specifically causation, the fact that an accident occurred, should be preserved by this court. It's not disputed by the defense. So we should retry the issue of damages and apportionment of fault. Okay? Because we're going to have to pay these people over again and we're not going to recover those costs. But I do not believe you can do an editor. However, I would love for you to prove us wrong and give us at least the $285,000 that Louisiana case law dictates as quantum for these injuries. What do you mean give us? You order? I don't think you can do it. I don't think you can do it. I'm just saying. I think you were arguing it up to here at first. It seemed to me that we need to order that outright. I'm glad you asked that question. No, I don't believe that you can under the law. I believe that what you have to do is remand for a new trial on the limited issues of damages and apportionment of fault. Damages in the sense of damages other than what is not disputed, which is that they What are the general damages? What is the loss of consortium? What is any loss of earning capacity? All those things that naturally emanate from having all those terrible things happen to you during that period of time and in the future. Well, you're not arguing that loss of consortium was the correct ruling because the son had no damages. No, I'm arguing that because the son was a very young boy and he just has his mom. It's his mom and him. That's it. So when the mom's laid up, Your Honor, like you were with surgery and having all the problems that come from having a bad spine and all the surgical procedures and recovery and everything else and the ongoing problems, unquestionably, that's worth at least a dollar to her son. It's also worth at least a dollar to her, like it is to me, the fact that because I'm all stiff and hurting, my relationship with my son is injured, and they gave zero. That completely defies the evidence. There's case law out there where a woman had medical malpractice procedure, lost her whole bowel, and they gave nothing for consortium. The court of appeal reversed that and said it's clear from this type of injury to a woman or to a man that their relationship with their child, their small child, is going to be affected in some way. So that should be reversed also. To touch, and I know I'm short on time, so to debunk what counsel said, Dr. Broussard, their doctor said, I said, so the medical treatment that you have reviewed appears to have been reasonable and appropriate from the information that you have, correct? Correct. Story over. That part of the ruling is proper and should stay. All the damages are agreed to by their doctor, too. But then, as I alluded to earlier, he says she lost two mobile segments. No getting it back. It's mechanical pain. A two-level fusion is going to cause some adjacent segment problem. And then he talks about 3% per year. So when counsel says that his doctor didn't say any of this, I'm reading it. It's in the record at 2737, 2750, 2751. He said, wouldn't it be more probable than not that Ms. Wright is going to need orthopedic or spinal care in the future as that process continues to wear and tear on the adjacent levels in her neck? And he's already talked about she has mechanical pain limitations. I would say yes. We have a contradiction here. I'm reading directly from the record. He says she's going to have pain limitations, et cetera, and we all understand that. So all of the damages should be sent back other than the award of causation for the past medicals. Last but not least, apportionment of fault needs to be retried as well. A key witness, there were two officers at the scene. Only one was listed by the Ponchatoula Police Department in their report. When we finally caught up with the second officer just after trial, he said, that's our policy. When you call Ponchatoula Police Department like we did countless times, we emailed them over and over again, they were a broken record. You've got to talk to the officer that wrote the report. We don't know who else was there. We only know the officer that wrote the report. That's LaCour Hall. We'll send you to her voicemail. We left like ten voicemails. We got her email. I've got email after email in here. Because it wasn't in the trial record, we weren't aware that we could submit them. But we'd love to file a 28-J letter. Thank you. The other issues that were touched on also affect apportionment of fault, the dash cam that was foliated, et cetera. So apportionment of fault should be revisited. Thank you.